Case 5:25-cv-00294   Document 21   Filed 02/11/26 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
February 11, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| XIAONAN CHANG, | § | |
| Petitioner, | § § | |
| v. | § | CIVIL ACTION NO. 5:25-CV-294 |
| ORLANDO PEREZ, ET AL., | § § | |
| Respondents. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Xiaonan Chang's Emergency Petition for a Writ of Habeas Corpus, (Dkt. No. 1), and Respondents' Response to Petitioner's Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. No. 15). The petition alleges that Petitioner's detention in federal immigration custody is unconstitutional. (Dkt. No. 1). The primary issue before the Court is whether there is a significant likelihood that Petitioner's removal from the United States will occur in the reasonably foreseeable future. For the reasons discussed below, the motion for summary judgment will be **DENIED**, and the petition will be **GRANTED in part and STAYED in part**.

### I. BACKGROUND

Petitioner is a Chinese national currently detained in federal custody at the Laredo Processing Center. (Dkt. No. 15-1 at 1).[1] She is not a citizen or legal resident of any country other than China. (Dkt. No. 1-2 at 2). She has been detained in immigration custody since she entered the country in November 2024. (*Id.*). Petitioner first entered the United States on or about November 14, 2024, when she entered without inspection near San Ysidro, California. (Dkt. No. 15-1 at 1).[2]

---

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

[2] As an attachment to their motion for summary judgment, Respondents included a declaration from Daniel J. Cantu, a Deportation Officer familiar with Petitioner's case. (Dkt. No. 15-1). Petitioner objects to Officer Cantu's declaration as incompetent summary judgment evidence. (Dkt. No. 18 at 18). She

After her entry and apprehension, Petitioner was placed in expedited removal proceedings. (Dkt. No. 15-1 at 2). During her expedited removal proceedings, Petitioner received a credible fear finding related to her applications for relief based on her claims that the "Chinese police and people affiliated with the police kidnapped and tortured [her] after [she] converted to Christianity." (Dkt. No. 1-2 at 2; Dkt. No. 15-1 at 2).

At the final hearing of her removal proceedings on May 22, 2025,[3] Petitioner was ordered removed to China and simultaneously granted Withholding of Removal under Immigration and Nationality Act (INA) Section 241(b)(3). (Dkt. No. 1-1 at 2). Her application for asylum was denied. (*Id.*). Petitioner waived appeal of the decision, but the Government reserved appeal. (*Id.* at 5).

According to Petitioner's declaration, in July 2025, she asked a deportation officer when she would be released. (Dkt. No. 1-2 at 2). She claims that the officer told her that the agency was looking for another country to remove her to because her asylum claim was denied. (*Id.*). She again asked deportation officers when she would be released in November 2025, but she did not receive additional updates. (*Id.*). As of December 15, 2025, Petitioner had not been notified of any other country that would accept her removal. (*Id.*).

On October 20, 2025, Petitioner filed the instant petition for a writ of habeas corpus. (Dkt. No. 1). The petition asserts three claims for relief. First, she claims that her detention is indefinite, and that it violates the Immigration and Nationality Act (INA). (*Id.* at 21–22). Second, she claims that her indefinite detention violates the due process clause. (*Id.* at 22). Finally, she claims that her removal to an undisclosed third country would violate the due process clause. (*Id.* at 22–23). She asks the Court to grant her declaratory and injunctive relief. (*Id.* at 23).

---

argues that an unsworn declaration may only be considered as summary judgment if the declaration states that the statements are made "under penalty of perjury" and verified as "true and correct." (*Id.*) (citing 28 U.S.C. § 1746 and *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)). Officer Cantu's affidavit does not verify that his statements are "true and correct." (Dkt. No. 15-1). In evaluating the declaration as summary judgment evidence, the Court finds that it is not competent summary judgment evidence under the legal standard for unsworn declarations, and the objection is sustained. 28 U.S.C. § 1746; *Nissho-Iwai Am. Corp.*, 845 F.2d at 1306 (5th Cir. 1988); *see also Vargas Istamo v. Perez*, No. 5:25-cv-186, slip op. at 2 (S.D. Tex. Dec. 19, 2025). However, the Court will not strike the declaration because, even considering the evidence, Respondents motion fails for reasons stated within this Order.

[3] Petitioner attaches the Order of the Immigration Judge dated May 22, 2025. (Dkt. No. 1-1). Officer Cantu's declaration erroneously provides the date of May 23, 2025. (Dkt. No. 15-1 at 2).

Since the petition was filed, the agency has internally reviewed Petitioner's custody. According to Deportation Officer Cantu's declaration, Immigration and Customs Enforcement's (ICE) Enforcement and Removal Operations (ERO) began a custody review for Petitioner on November 24, 2025. (Dkt. No. 15-1 at 2). On November 26, 2025, an initial Post-Order Continued Custody Review was completed. (*Id.*). On December 16, 2025, Petitioner was served with a Notice to Alien of Interview for Custody Review. (*Id.*). On December 17, 2025, ERO served Petitioner with a Decision to Continue Detention. (*Id.*). Finally, Officer Cantu states: "As of January 2, 2026, ERO is working with ERO Headquarters Removals and International Operations ("HQ-RIO") to identify and secure removal to a third country. Therefore, there is a significant likelihood of removal in the reasonably foreseeable future as ERO is actively working to secure third country removal." (*Id.*). As of the date of this Order, there is no evidence in the record that any country has communicated that they will accept Petitioner's removal.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record as a whole to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, the Court must view the facts in the light most favorable to the nonmoving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019). Once a party has properly moved for summary judgment under Rule 56, the non-movant must demonstrate which "specific facts" show that there is a genuine dispute. *Celotex*, 477 U.S. at 324. A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the Court must construe all facts and draw all inferences in the light most favorable to the non-movant. *Id.* at 255. However, the presence of a mere scintilla of evidence is not sufficient to overcome a motion for summary judgment. *Id.* at 252.

### B. 28 U.S.C. Section 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

## III. DISCUSSION

As a preliminary matter, the Court will not consider Petitioner's third-country removal claim because it is premature. The Court finds that the claim is premature at this stage, so the Court will **STAY** her third-country removal claim for disposition at a later date.[4]

Two claims remain in her petition, both asserting that she is entitled to release because she is indefinitely detained. (Dkt. No. 1 at 21–22). Respondents move for summary judgment, asserting that Petitioner's detention is lawful under 8 U.S.C. § 1231. First, the Court will examine its jurisdiction to hear these claims. Second, the Court will address Respondents' argument that Petitioner's removal period should be tolled. Finally, the Court will analyze Petitioner's detention and likelihood of removability in the reasonably foreseeable future under *Zadvydas*. Ultimately, the Court will deny the motion for summary judgment, grant the petition, and order Petitioner's release after finding that she is indefinitely detained.

### A. The Court Has Jurisdiction to Hear These Claims

In their motion for summary judgment, Respondents do not explicitly challenge the Court's jurisdiction, but they do challenge Petitioner's exhaustion of administrative remedies. (Dkt. No. 15 at 6). Specifically, they assert that "Petitioner has failed to demonstrate compliance with the regulatory provision of 8 C.F.R. § 241.13. Petitioner

---

[4] This determination was similarly made in another case recently decided by the Court. *Vargas Istamo*, No. 5:25-cv-186, slip op. at 5 (S.D. Tex. Dec. 19, 2025).

has not presented any evidence that she has submitted a written claim to HQPDU in which she asserts that there is no likelihood of her removal in the reasonably foreseeable future, as required under 8 C.F.R. § 241.13(d)(1)." (Dkt. No. 15 at 6).

Petitioner replies that this argument reads an exhaustion requirement into the regulations. (Dkt. No. 18 at 12). Additionally, she cites several cases finding that there is no statutory requirement to exhaust administrative remedies in noncitizen detention claims. (*Id.* at 13). Further, she cites *Zamanpour v. Perez*, No. 5:25-cv-224, slip op. at 18 (S.D. Tex. Dec. 24, 2025), for the proposition that exhaustion is a "prudential consideration rather than a statutory or jurisdictional mandate." (Dkt. No. 18 at 13).

The Court finds that Petitioner was not required to file a written request before filing the instant petition. The regulation provides: "An eligible alien *may* submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). While Respondents characterize this regulation as a requirement, the Court finds that the language of the regulation is permissive and not mandatory. At least one other court has found the same and rejected Respondents' exhaustion argument. *See Black v. Agudelo*, No. 5:25-cv-295, slip op. at 5–7 (S.D. Tex. Feb. 2, 2026). For these reasons, the Court finds that it has jurisdiction to consider Petitioner's detention claims.

### B. Petitioner's Removal Period Should Not Be Tolled

Respondents also argue that Petitioner's removal period should be tolled "to account for her failure to make an effort to secure her own removal and lack of cooperation with ICE," as required by regulation. (Dkt. No. 15 at 6). Respondents assert that "Petitioner has not identified any self-made efforts to comply with her removal order." (*Id.*). Further, "[s]he has not provided evidence that she has applied for a visa to a third country where she is not afraid of going." (*Id.*). Respondents rely on 8 C.F.R. § 241.13(d)(2) and *Lawal v. Lynch*, 156 F. Supp. 3d 846, 850 (S.D. Tex. 2016), to support the argument for tolling. 8 C.F.R. § 241.13(d)(2) provides that, with their written request to the HQPDU under 8 C.F.R. § 241.13, a noncitizen shall include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to

cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

Petitioner replies that she has cooperated with ICE's removal efforts to the extent she is required to and that *Lawal* is distinguishable. (Dkt. No. 18 at 9, 11). She asserts that any perceived failures to cooperate with ICE are matters outside of her control as opposed to willful refusals to comply with requests. (*Id.* at 10).

Generally, "when an alien is ordered removed, the [Department of Homeland Security (DHS)] shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). District courts have found it appropriate to toll removal periods when a petitioner does not comply with removal efforts, including when petitioners "affirmatively contact authorities to renounce their citizenship, thwart foreign consulates' requests to secure travel documents, tie up the underlying deportation order in litigation, and refuse to board an aircraft to depart the country." *Black*, No. 5:25-cv-295, slip op. at 9 (Feb. 2, 2026) (collecting cases). However, these cases, including *Lawal*, each involved removal to the country to which they are ordered removed—not removal to a third country after a petitioner is awarded withholding of removal. *See id.* Additionally, they each include willful acts to undermine removal efforts.

Here, the Court finds no reason to toll Petitioner's removal period. There is no evidence that Petitioner has affirmatively failed to cooperate with the agency's removal efforts. Unlike petitioners in other cases, like *Lawal*, Petitioner has not been issued a notice of failure to comply with removal efforts. (*See* Dkt. No. 18 at 11). Construing these regulations as imposing requirements beyond their text is not supported by the text or case law. For these reasons, the Court rejects Respondents' argument that Petitioner's removal period should be tolled.

### C. Petitioner's Detention Is Indefinite

The Court has previously ruled on indefinite detention claims and applies the same *Zadvydas* framework here. *Vargas Istamo*, No. 5:25-cv-186, slip op. at 6–11 (Dec. 19, 2025). Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Zadvydas v. Davis*, the Supreme Court held that the

INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). As the Court explained, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

In *Zadvydas*, the Supreme Court explained that "[w]hen an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." 533 U.S. at 682. Inadmissible noncitizens or those with certain criminal convictions may be detained beyond the removal period, 8 U.S.C. § 1231(a)(6), but the Court held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States," and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.

The Court established a "6-month presumption" of reasonableness following the issuance of a removal order. *Id.* at 701. After the six-month period of "presumptively reasonable" detention ends, a petitioner seeking release from detention must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006) (denying a *Zadvydas* claim where petitioner offers "nothing beyond conclusory statements"). Once a petitioner meets their burden, the burden shifts to the respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Here, Petitioner's post-removal-order detention began, for purposes of the *Zadvydas* analysis, on June 23, 2025, when her order of removal became final as a result of DHS's failure to file an appeal of her removal order. (Dkt. No. 1 at 13; Dkt. No. 15 at 2; 8 C.F.R. § 1241.1(c)). Accordingly, Petitioner has now been detained after a final order of removal for over seven months. Thus, the six-month period of "presumptively reasonable" detention under *Zadvydas* has ended. Petitioner must next show there is

"good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

### 1. Petitioner Meets Her Burden

Petitioner has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. First, Petitioner argues that the only country designated for removal is China, and she cannot be removed there because she was granted withholding of removal. (Dkt. No. 1 at 16). Second, she alleges, and Respondents do not rebut, that no country has been identified for her removal. (*Id.* at 14). Third, Petitioner does not have legal residence in any alternative countries. (*Id.* at 16). Respondents argue that Petitioner has failed to meet her burden. (Dkt. No. 15 at 5).

In the Fifth Circuit, a petitioner must show more than conclusory statements to establish good reason. *Andrade*, 459 F.3d at 543–44. Other district courts provide helpful persuasive authority in considering whether a petitioner meets this burden. For example, in *Trejo v. Warden of ERO El Paso East Montana*, the court found that Trejo met his burden by alleging that he received deferral of removal to El Salvador, his only country of citizenship, and "that ICE has not identified a third country that will accept him." No. 25-CV-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025). In another case, *Baltodano v. Bondi*, the petitioner met his burden by showing that he had been granted deferral of removal to Nicaragua, that he had no ties to any other country, and that travel documents had not been secured for any third country. No. CV-25-1958, 2025 WL 3484769, at *4 (W.D. Wash. Dec. 4, 2025). Other courts have found that the expiration of the presumptively reasonable six-month period is enough to meet the burden. *Iakubov v. Figueroa*, No. CV-25-3187, 2025 WL 2640218, at *2 (D. Ariz. Sep. 15, 2025); *Pham v. Bondi*, No. 2:25-CV-1835, 2025 WL 3122884, at *1 (W.D. Wash. Nov. 7, 2025).

Here, the Court finds that Petitioner presents sufficient evidence to meet her burden. Her only country of citizenship is China, and she has no other legal residency status in other countries. She cannot be removed to China because the IJ found that she was entitled to withholding of removal. She has not been notified of a third country for removal. There is no evidence in the record that any other country has agreed to accept her removal. Each of these facts supports her assertion—and go beyond conclusory statements—that she has good reason to believe that there is no significant likelihood of

removal in the reasonably foreseeable future, and she has met her burden to establish good reason.

### 2. Respondents Fail to Meet Their Burden

Because Petitioner has shown good reason, the burden then shifts to Respondents to provide evidence sufficient to rebut her showing. Respondents put forth that "ICE is working to find a third country to accept the Petitioner's removal" and that "[t]he evidence shows that ICE is seeking to facilitate the Petitioner's removal to a third country." (Dkt. No. 15 at 7).

The evidence presented by Respondents fails to rebut Petitioner's good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Officer Cantu's declaration—the only evidence attached to the motion for summary judgment—contains no information showing efforts to remove Petitioner, communications with other countries to facilitate her removal, requests sent to other countries to inquire about accepting Petitioner for removal, or any other indication that Respondents have tried to remove her at all. (Dkt. No. 15-1). The only assertion is a bare statement that "ERO is working with ERO [HQ-RIO] to identify and secure removal to a third country." (*Id.* at 2). Further, the assertion that "there is a significant likelihood of removal in the reasonably foreseeable future . . . ." is a conclusory opinion. (*Id.*).

To rebut a showing of good reason, Respondents must "respond with evidence sufficient to rebut [a petitioner's] showing." *Zadvydas*, 533 U.S. at 701. In *Zamanpour*, the court found that generalized statements about removal efforts and averments of likelihood of removal alone are insufficient to satisfy respondents' evidentiary burden. No. 5:25-cv-224, slip op. at 16 (Dec. 24, 2025). There, the respondents claimed that "ICE avers that there is significant likelihood of removal in the reasonably foreseeable future" and provided a statement from a deportation officer that "ERO is currently working to identify and secure removal for Petitioners to a third country." *Id.* Without more evidence, the court found that this was "a far cry from the evidence required to rebut [petitioners'] showing." *See id.* The Court finds the reasoning in *Zamanpour* persuasive and applicable to the facts before the Court.

Here, Petitioner's post-removal-order detention has lasted over seven months. Petitioner is not able to be removed to China, her only country of citizenship, because she

9 / 11

was granted withholding of removal under the INA. Like in *Zamanpour*, Respondents have presented mere recitals of intent to remove Petitioner without evidence of concrete action or progress toward removal. Additionally, there is no evidence of requests made to third countries to accept Petitioner's removal. While Respondents contend that ERO is actively working on Petitioner's removal, the Court finds that these efforts and the evidence presented by Respondents do not rebut Petitioner's showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

### 3. Respondents Are Not Entitled to Judgment as a Matter of Law

As the movants in a motion for summary judgment, Respondents carry the burden to establish that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. Based on the Court's analysis of the reasonableness of Petitioner's detention set forth above, Respondents are not entitled to judgment as a matter of law. Because Respondents have not rebutted her showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the motion for summary judgment is denied.

### 4. Petitioner Is Entitled to Release

The Court finds that Petitioner's continued detention violates due process because there is no significant likelihood of removal in the reasonably foreseeable future. For that reason, the Court determines that she is entitled to relief on the indefinite detention claims in her petition for a writ of habeas corpus. Because the Court finds that there is no significant likelihood of removal in the reasonably foreseeable future, Petitioner must be released. *Zadvydas*, 533 U.S. 701 (holding that a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"). The Court orders her release subject to the conditions set forth below.

## IV. CONCLUSION

For the foregoing reasons, Respondents' Motion for Summary Judgment, (Dkt. No. 15), is **DENIED**. Petitioner's Emergency Petition for a Writ of Habeas Corpus, (Dkt. No. 1), is **GRANTED in part and STAYED in part**.

The Court **ORDERS** Respondents to release Petitioner **by February 13, 2026, at 5:00p.m.** Respondents must notify her counsel of the exact time and location of release **no less than two hours** before her release.

The Court **ORDERS** that Petitioner cannot be re-detained without a hearing before this Court to determine whether there has been a material change in circumstances; and she may only be subject to detention if there is a material change in circumstances. The 10-day notice provision from the Court's December 30 Order, (Dkt. No. 6), **REMAINS IN EFFECT**.

No later than **February 17, 2026, at 5:00 p.m.,** the parties shall provide the Court with a status update concerning Petitioner's release. The parties should also notify the Court of the conditions, if any, of her release.

It is so **ORDERED**.

**SIGNED** on February 11, 2026.

_____
John A. Kazen
United States District Judge